FILED

2016 Sep-29  PM 01:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| CHARITY VAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 6:15-cv-00940-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Charity Vaughn ("Vaughn") seeks review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and Disability Insurance Benefits ("DIB").  Vaughn timely pursued and exhausted her administrative remedies.  This case is therefore ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Vaughn filed her application for a period of disability and DIB in January 2013, alleging she became unable to work beginning July 28, 2009.  (Tr. 133-139).  Vaughn was a forty year old female on December 31, 2013, her date last insured ("DLI").  (Tr. 23).  Vaughn has at least a high school education and past relevant work as a cashier and licensed practical nurse ("LPN").

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 14).

The Agency initially denied Vaughn's application, and Vaughn requested a hearing where she appeared in December 2013.  (Tr. 20 & 38-40).  After the hearing, the Administrative Law Judge ("ALJ") denied Vaughn's claims on March 17, 2014.  (Tr. 34).  Vaughn sought review by the Appeals Council, but it declined her request on April 3, 2015.  (*See* Doc. 1; Tr. 1-6).  On that date, the ALJ's decision became the final decision of the Commissioner.  On June 4,  2015, Vaughn initiated this action.  (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed
          by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national
          economy.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Vaughn last met the insured status requirements of the Social Security Act through December 31, 2013, and had not engaged in substantial gainful activity since July 28, 2009, the alleged onset date. (Tr. 23). At Step Two, the ALJ found Vaughn has the following severe impairments: type II diabetes mellitus, congenital fusion of the cervical spine, carpal tunnel syndrome bilaterally, history of bipolar disorder, history of methamphetamine and prescription drug (Percocet) abuse, and obesity. (*Id.*). At Step Three, the ALJ found Vaughn's impairments, including the substance use disorders, met sections 12.04 and 12.08 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d)). (*Id.*). The ALJ further found that if Vaughn stopped the substance use, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities; therefore, she would continue to have a severe impairment or combination of severe impairments, but would not have

an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d)).  (Tr. 24-25).

Before proceeding to Step Four, the ALJ determined Vaughn's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that, if Vaughn stopped the substance use, she would have the following RFC:

> [T]o occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. She can stand and or walk in combination, with normal breaks, for at least six hours during an eight hour workday and sit, with normal breaks, for up to eight hours during an eight-hour workday. The plaintiff can frequently climb ramps and stairs and should never climb ladders, ropes or scaffolds. The plaintiff can frequently balance, stoop, kneel, crouch, and crawl. She should not be required to perform overhead work activities or reach above the shoulder level on the right. She can frequently perform fine and gross manipulation bilaterally. She should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and working in areas of vibrations. The plaintiff should avoid exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery. She can perform simple routine tasks requiring no more than short simple instructions and simple work related decision making with few workplace changes. She can have occasional interactions with co-workers and supervisors and no interactions with members of the general public.

 (Tr. 25.)

At Step Four, the ALJ found that, if Vaughn stopped the substance use, she would be unable to perform past relevant work.  (Tr. 33).  At Step Five, the ALJ determined, based on Vaughn's age, education, work experience, RFC, and if she stopped the substance use, jobs exist in significant numbers in the national economy Vaughn could perform. (*Id.*).  Therefore, the ALJ determined Vaughn has not been under a disability and denied Vaughn's claim.  (Tr. 34).

## V. Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Keeping in mind the scope of its review and having scrutinized the record before it, this court finds substantial evidence to support the ALJ's decision that Vaughn is not disabled within the meaning of the Social Security Act. Vaughn's substance abuse, the ALJ decided, contributed and was material to a disability determination because Vaughn "would not be disabled if she stopped the substance use." (Tr. 34). Vaughn disagrees and argues her impairments are severe and disabling irrespective of substance abuse. (Doc. 9 at 16). The court has carefully considered Vaughn's contentions, but is unpersuaded by her arguments for relief.

Vaughn urges her physical and mental impairments are so severe they are disabling despite substance abuse. In other words, if she stopped abusing methamphetamines and

prescription drugs, which she states she has done, then she still has disabling impairments including diabetes, mood swings, neck problems, carpel tunnel problems, and obesity.   In this regard, Vaughn tries to distinguish her case from others where, for example, "the claimant appeared to be 'entirely normal' when sober and did not have chronic physical impairments that would remain if he quit drinking." (Doc. 9 at 14) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).   And, she argues, her case is different from *Deters v. Commissioner of Soc. Sec.,* 301 F.App'x. 886 (11th Cir. 2008), where the claimant's performance on memory tests improved after he quit drinking and therefore validated the conclusion that alcohol use was a contributing factor material to his disability determination.  (Doc. 9 at p. 14).   Unlike these cases, Vaughn posits she is disabled, even if sober.  (*Id.*).

In cases where a claimant is found disabled, but also there is a determination of substance abuse, the ALJ "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). The ALJ is required to determine which of the plaintiff's physical and mental limitations that supported the original disability determination would remain absent drug or alcohol use. 20 C.F.R. §§ 404.1535(b)(3), 416.935(b)(3). If the plaintiff would no longer be disabled if she stopped using drugs or alcohol, then the substance abuse is considered a "contributing factor material to the determination of [his] disability," and she has failed to meet her burden of showing that he is disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).   In its decision, the ALJ applied this analysis and considered the precise issue Vaughn raises here – whether she is disabled absent substance abuse.

**A. Substantial evidence supports the ALJ's decision that, absent substance abuse, Vaughn's mental health impairments are not disabling as defined by the Social Security Act.**

Vaughn alleges disability due to several mental impairments, including bi-polar disorder, anxiety, depression, and hallucinations. (Tr. 161). Regarding her mental impairments, the ALJ found Vaughn would continue to have more than a minimal functional limitation in ability to do work activity even if she stopped abusing drugs. (Tr. 24). But, the ALJ decided, the remaining mental impairments, absent substance abuse, were not severe enough for a disability determination. (Tr. 25). Specifically, the ALJ decided, "without substance abuse the claimant has mild restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration." (*Id.*).

Medical records from 2012, when Vaughn was treated at Winfield Behavioral Health Services, document Vaughn's methamphetamine and opiate abuse. (Tr. 425). Significantly, they also document her improved mental health when she abstained from substance abuse. (*Id.*). When Vaughn presented to Winfield Behavioral Health Services in June 2012, she had not been seen in the clinic in eight months. (Tr. 426). She complained of depression, anxiety, and paranoia. (*Id.*). She initially denied drug use, but when "challenged" admitted opiate abuse and regular use of methamphetamine two years prior. (*Id.*). She was assessed as having fair judgment, poor insight, impaired concentration, and orientation as to person, place, and thing. (*Id.*). Her speech was appropriate, her mood was depressed and anxious, her affect was appropriate, her behavior cooperative, and her thought was logical. (Tr. 425). Vaughn did not return for her follow-up visit in July 2012. (*Id.*). When she did return in August 2012, she reported two weeks sobriety. (*Id.*). Notably, Vaughn was "doing better" and felt her prescribed

medications were helpful.  (*Id.*).   The clinical assessment indicated Vaughn exhibited good judgment, good insight, good concentration, orientation as to person, place, and thing with a memory impairment of "none."   It also noted adequate grooming, euthymic (normal, non-depressed) mood, appropriate affect, cooperative behavior and logical thought.  (*Id.*).   Further, Vaughn received a Global Assessment Functioning ("GAF") rating of 60, indicating only mild to moderate symptoms.[4] (*Id.*).

Vaughn's treatment at Winfield Behavioral Health was sporadic.  She did not seek treatment between February 2008 and October 2011.  (Tr. 427).  In 2011 and 2012, Vaughn did not show for three appointments.  (Tr. 425-427).  In 2011, she was seen once and then twice in 2012.  (*Id.*).  These records substantiate the ALJ's finding that "the objective evidence of record indicates the claimant has not been in mental health treatment for a consistent and ongoing basis for 'years' as alleged."  (Tr. 28-29).

Records from a 2013 psychiatric assessment at Northwest Alabama MHC ("MHC") document Vaughn's history of methamphetamine and prescription drug abuse.  (Tr. 498).  And the records further substantiate Vaughn's substance abuse as exacerbating her mental health impairments.  For example, in June 2013, Vaughn reported elevated anxiety and depression, but it was due to shame and guilt from abusing Percocet. (Tr. 495).   Later that year Vaughn was reassessed.  (Tr. 493).  At that time, she was sober, "totally clean," and "working the program." (*Id.*). She reported doing much better.  (*Id.*).  Significantly, she denied hallucinations, suicidal ideations, and mood instability.  (*Id.*).

---

[4]     By contrast, Vaughn was assigned a GAF rating of 37 in April 2013, indicating an inability to function in almost all areas of life, and a GAF rating of 45 in June 2013, indicating serious mental impairment. (Tr. 30). These GAF ratings were assigned in connection with Vaughn's treatment of substance use. (Tr. 473, 481).

The MHC records also indicate that prior to her 2013 assessment Vaughn was prescribed several different medications to treat her mental health impairments. (Tr. 498). The efficacy of those medications is unclear, however, because Vaughn admitted to being "on drugs" while taking them. (*Id.*). On assessment, Vaughn stated that she thought Risperdal helped her hallucinations, but she was "on drugs" when she took it. (*Id.).* She stated Trazadone was not "extremely effective" but she was "on drugs" when it was prescribed as well. (*Id.*). The court views these records as further supporting the ALJ in finding Vaughn's substance abuse as a contributing factor material to her disability determination.

Based on Vaughn's mental health records, including those cited above, the ALJ concluded Vaughn "has a substantial history of substance abuse that exacerbated her mental symptoms." (Tr. 30). While the record indicates severe difficulties with depression, anxiety, mood swings, and hallucinations, the ALJ found Vaughn's substance abuse contributed to those mental impairments in a material way such that the "resulting symptoms were exacerbated by her substance abuse rising to marked limitations in social functioning and concentration, persistence, and pace." (Tr. 24). The court finds substantial evidence in the record to support this conclusion. Indeed, the medical records document improved mental health when Vaughn is sober and her complaints of depression, anxiety, hallucinations, and paranoia are improved, if not completely alleviated, when she is clean. Moreover, absent substance abuse, the remaining mental impairments are not corroborated by the record as severe enough to cause the marked limitations in ability necessary for a disability determination.

If Vaughn stopped the substance use, the ALJ found that she would have "mild restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of

decompensation, each of extended duration." (Tr. 25). The record supports this conclusion. Specifically, the record indicates that Vaughn could get her 10 year old son ready for school, help prepare meals, help her son with homework, independently perform personal care items, do laundry, make beds, sweep, drive when necessary, shop in a store with her husband, count change, spend time with others, use social networking sites and play games on the computer. (Tr. 175-182). The record also indicates Vaughn went to watch all of her son's baseball games and would visit the school if he was participating in a program or play. (Tr. 64). Vaughn also attends church regularly. (Tr. 63). Given this record, the court finds substantial evidence to support the ALJ's conclusion that Vaughn's mental impairments, absent substance abuse, lack the requisite severity for a disability determination.

**B. Absent substance abuse, Vaughn's physical impairments are not disabling as defined by the Social Security Act.**

As far as Vaughn's mental health impairments are concerned, there is ample evidence to support the ALJ's decision that substance abuse is what renders those impairments disabling – remove the abuse and remaining impairments exist, but they lack the requisite severity for a disability determination. Having scrutinized the record, this court finds the record also supports the ALJ's decision regarding Vaughn's physical impairments. Vaughn argues her impairments are "still severe and disabling without the substance abuse," and she points to her diabetes, chronic neck/back pain, obesity, and carpal tunnel syndrome as evidencing the same. (Doc. 9 at 16). While there is no dispute that Vaughn suffers from several physical ailments irrespective of her substance abuse, the ALJ found the limiting effects of pain or other symptoms associated with those impairments questionable and unsubstantiated by the objective medical evidence.

Regarding Vaughn's diabetes and obesity, the ALJ decided those impairments "do not restrict her ability to perform routine movement and necessary physical activity within a light

11

exertional work environment." (Tr. 27). The record supports this decision. Vaughn's medical records document her diabetes as controlled with medication; specifically, the record evidences her AIC scores were in normal ranges with medications. (Tr. 274, 278, 283, 465-66) (5.7 in October 2009, and March 2010; 5.5 in December 2010; and 5.4 in May 2013).  Because disorders controlled with medications cannot be considered disabilities, the ALJ decided Vaughn's diabetes was not disabling under the law. *See Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987); *see also Dawkins v. Bowen*, 848 F.2d 702, 706 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) in stating a condition that is reasonably remedied with medication is not disabling).  As far as Vaughn's obesity is concerned, the ALJ was required to consider obesity as an impairment when evaluating her disability.  *Sanders v. Astrue*, 2011 WL 5118808, at *3 (M.D.Ala. 2011) ("An ALJ must consider obesity as an impairment when evaluating disability.").  The ALJ did so and also considered Vaughn's obesity in combination with her other impairments.  (Tr. 27).  Vaughn did not establish her obesity resulted in functional limitations to prove her obesity as disabling under the Social Security Act. *Sanders,* 2011 WL 55118808 at *3 ("Plaintiff must establish that her obesity results in functional limitations and that she was 'disabled' under the Social Security Act) (citing 20 C.F.R. § 404.1512(a) & (c) (2011)).  While treatment notes document Vaughn's obesity, the record does not reveal any obesity-related limitations in functioning.  Nor does Vaughn allege any functional limitations or difficulties due to her weight.  At the hearing, Vaughn testified to how much she weighed, but she did not articulate any physical limitations associated with her obesity.  (Tr. 45-46).  Given this record, the court finds substantial support for the ALJ deciding Vaughn's diabetes and obesity were not disabling as defined by the Social Security Act.

12

Vaughn also claims disability due to carpal tunnel disease.  In August 2006, Vaughn underwent a nerve conduction study. (Tr. 302).  That study noted possible subtle bilateral carpel tunnel syndrome. (*Id.*).  Since that study Vaughn has not undergone any type of carpal tunnel release surgery.  Moreover, a March 2013 clinical examination shows she has normal bilateral dexterity in her fingers and thumb. (Tr. at 444).  A range of motion assessment from March 2013 also indicates normal dexterity and normal grip strength.  (Tr. 448-49).  The ALJ's conclusion that Vaughn's carpel tunnel pain was not disabling is based on substantial evidence and limitations from carpel tunnel syndrome were properly considered in the RFC. (Tr. 25).Additionally, Vaughn claims disability from a congenital defect where she says there is no cartilage between four of her vertebrae.  (Tr. 45)  At her December 2013 hearing, Vaughn testified she experienced  7/10 pain levels, she could not raise her arm overhead, and she could only lift a gallon of milk due to pain associated with this defect.  (Tr. 47-48).   The ALJ considered Vaughn's testimony and the objective medical evidence, finding Vaughn less than credible.  (Tr. 26-28).  In doing so, the ALJ decided:

> the course of medical treatment and the use of medication in this case are not consistent with disabling levels of pain and other subjective complaints.  In spite of what she described as disabling levels of pain so severe they disrupt her concentration and sleep, treatment records show the claimant sought consistent medication refills from treating physicians and reported her pain and diabetes were well controlled with no side effects from prescribed medication (Exhibits 2F, 3F, and 8F).  In fact, there is little to any indication in treatment notes that the claimant requested frequent changes to her medication regimen or sought an alternative treatment modality, such as, biofeedback, a TENS unit, or physical therapy, if the prescribed medications were not effective.  Additionally, the undersigned notes the record shows the claimant abused prescription pain medication and the record also shows the claimant had drug screens that were inconsistent with the claimant's prescribed medications that were suggestive of the claimant not taking pain medication as prescribed (Exhibit 3F).  As such, the claimant's complaints of pain are of questionable validity due to her drug addiction.

(Tr. 27).   Based on the discrepancy between Vaughn's allegations of disabling pain and the objective medical evidence, the ALJ questioned Vaughn's credibility.  Her abuse of pain medications further undermined the credibility of her complaints.   Because the ALJ clearly articulated her credibility finding and supported her finding with substantial evidence, this court will not disturb that finding here.[5]  *Foote v. Chater,* 67 F.3d 1553, 1561–62 (11th Cir.1995) ("[A] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

### C.  Vocational Expert testimony was properly considered in the ALJ's decision.

Finally, the court is unpersuaded Vaughn is entitled to any relief on the basis of hypotheticals raised in the Vocational Expert's ("VE") testimony.   At the December 2013 hearing, the ALJ questioned VE Barbara Assam with two hypotheticals. (Tr. 71-73).   The first hypothetical included Vaughn's impairments and the assumption that she could stand and/or walk with normal breaks for at least six hours during an eight-hour workday and that she can sit with normal breaks for eight hours during an eight-hour workday.  (Tr. 71-72).   Using this hypothetical, the VE testified available jobs existed in the regional and national economy including photocopy operator and mail sorter.  (Tr. 72).  The second hypothetical was based on

---

[5] The court notes that in addition to the above-quoted portion of the ALJ's decision, other parts of the record substantiate the ALJ's credibility finding.  For example, the ALJ found Vaughn's daily activities inconsistent (getting her son ready for school, helping prepare meals, doing laundry, making beds, sweeping, shopping in stores with her husband, using social networking sites, and playing games on the computer) with disabling levels of pain.  (Tr. 28). The ALJ relied on a disability determination examination by Dr. Robert Estock which found Vaughn only partially credible due to lack of corroboration from the medical records regarding her limitations.  (Tr. 88).   In the context of assessing credibility, the ALJ also compared Vaughn's testimony against medical records.  For example, she considered Vaughn's testimony her first marriage ended in divorce due to her hallucinations and mental problems, as compared to treatment notes contemporaneous to that divorce indicating the marriage ended because of infidelity. (Tr. 52; Tr. 365).

the same assumptions, but also included the limitations that the hypothetical individual would be unable to complete an eight-hour workday and a 40 hour work week on a regular basis. (Tr. 72-73) With the additional limitations, the VE testified all work was precluded. (Tr. 73). Because the second hypothetical included limitations ultimately belied by the record, the ALJ relied on the VE's testimony to the first hypothetical in her final decision. In doing so, this court finds no error. *See Adams v. Commissioner of Social Security*, 542 Fed.Appx. 854, 855 (11th Cir. 2013) ("Because the ALJ found that Adams's testimony supporting the hypothetical absences was not credible and because substantial evidence supports that determination, the ALJ did not err in disregarding the vocational expert's testimony that two absences per month [an additional limitation to initial hypothetical] would render Adams unable to work.").

At the hearing, Vaughn's counsel questioned the VE about her alleged problems with carpal tunnel syndrome. (Tr. 74). The VE testified there would not be a significant number of light or sedentary jobs if the claimant had only occasional use of her hands. (*Id.*). Counsel's question, however, was predicated on finding credible Vaughn's testimony about carpal tunnel pain. (*Id.*). As discussed before, the record substantiates the ALJ's credibility finding, and in the absence of objective medical evidence to corroborate Vaughn's subjective complaints, there is no error in the ALJ's disregard of this portion of VE's testimony. Accordingly, the court finds the ALJ's decision not to determine Vaughn disabled under the Social Security Act is supported by substantial evidence.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security

denying Vaughn's claim for a period of disability and DIB is **AFFIRMED**, and this action

**DISMISSED WITH PREJUDICE.**

DONE this 29th day of September, 2016.

 

 

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE